Common Pleas Court of Noble County.

### WALTERS V. LARRICK.*

Decided October Term, 1930.

---

\* Motion to certify overruled by the Supreme Court, January 28, 1931.

*U. H. Buckey*, attorney for plaintiff.

*J. Evan Walters, W. H. Smith, E. P. McGinnis* and *G. D. Dugan,* attorneys for defendant.

DYE, J.

In this case the plaintiff, J. Evan Walters, seeks to recover from the defendant, William H. Larrick, the sum of $1,734, for necessaries, by way of board, lodging, clothing and care, which he claims to have furnished one, Ella May Larrick, for a period of 289 weeks intervening between September 1, 1923, and March 19, 1929.

The plaintiff alleges that during said time the said Ella May Larrick was the wife of the defendant; that the defendant during such time failed and neglected to provide his said wife with such necessaries; that said Ella May Larrick during said time was unable because of ill health to provide herself with such necessaries; and that prior to said first day of September, 1923, plaintiff notified defendant that he, plaintiff, was so providing for her and that he would expect compensation from him therefor; that defendant has paid nothing on said account and that the services so rendered were reasonably worth the sum charged.

As a first defense to said action, the defendant pleads a general denial. As a second defense, he alleges that he obtained a divorce from the said Ella May Larrick in 1919, by a decree of the Superior Court of King county, state of Washington, and that the same ever since said time has been in full force and effect.

The plaintiff by his reply claims that the defendant never was a resident of the state of Washington; that said

Ella May Larrick has never been a resident of any state except Ohio since her marriage; that she was an inmate of the Ohio Hospital for Insane at Athens, Ohio, during all of the year 1919; that neither she nor any person having the care or custody of her had notice of the pendency of such action for divorce and that if such alleged decree was obtained by defendant, it is void and of no effect in this state and in no way releases defendant from his obligation to support his said wife.

A jury was waived and the cause submitted to the court upon the pleadings and the evidence.

The evidence shows that said Ella May Larrick was committed to said Athens State Hospital on May 1, 1911; that she was released therefrom on "trial visit" about October 19, 1920, and discharged "as improved," about June 30, 1921, and that she has been insane from the date of her commitment up to this time; that no guardian was ever appointed for her until about March, 1929, after the commencement of this suit; and that the defendant has contributed nothing toward her support since the time of her commitment to said Athens Hospital.

The evidence further shows that she was unable to support herself, either by reason of property or ability to earn a livelihood, during the 289 weeks mentioned in the petition; that she was so supported and provided for by plaintiff, in good faith, during the time mentioned, and that such support and maintenance was reasonably worth the amount alleged in the petition. The evidence further shows that the defendant, William H. Larrick, left Ohio and went to the state of Washington in the spring of 1918; that he resided there about two and one half years or until the fall of 1920, when he returned to Ohio. That on September 29, 1919, he was decreed an absolute divorce from said Ella May Larrick by said court in Kings county, Washington, upon the ground—

"that the defendant is afflicted with incurable chronic dementia which has existed for over ten years last past."

Said court further finding that said Ella May Larrick—
"having been heretofore duly and regularly served by pub-

lication herein, but being in default."

There is no evidence in the case upon which this court can base a finding that the decree for divorce in the state of Washington was a nullity.

Under the evidence the court finds that the defendant, William H. Larrick was at such time properly domiciled in that state and that the decree rendered was in accordance with the laws of that state.

Different states have different statutory grounds for divorce and if a decree in one state is rendered upon a statutory ground in that state, it is good as a divorce, in so far as it severs the marriage relations, in another state the laws of which make no provision for divorce upon such ground.

Insanity in the state of Washington being evidently a statutory ground for divorce, it follows, that a divorce granted there upon such ground, must be recognized in Ohio, except as to property rights affected, although Ohio does not allow divorces upon that ground.

Every state has not only a right to determine the status of its own domiciled citizens without interference of other states or courts of other states, but it has, as well, the right to determine the statutory grounds for divorce within its jurisdiction.

I, therefore, find and hold that the decree for divorce in the state of Washington did dissolve the marriage relations between the parties and restored the defendant, Wm. H. Larrick, to the status of an unmarried man.

The evidence further shows that said divorce was obtained without service other than by publication on the wife, Ella May Larrick, she at all times being a resident of the state of Ohio.

In such case I believe it is well settled that such divorce did not affect the property rights of the wife in this state.

Therefore, all that can be claimed for the Washington decree is, that it dissolved the marital relation between the parties and restored the husband to the status of an unmarried man. This that court could do, but as it had

no jurisdiction of the person of the wife, it was not competent for it to affect such rights as the wife had acquired in the property of the husband under the laws of the state of Ohio. *Doerr* v. *Forsythe, Admrx.*, 50 Ohio St., 726; *Mansfield* v. *McIntyre*, 10 O., 27; *McGill* v. *Deming*, 44 Ohio St., 645.

So I may say without further comment, that under the law of Ohio, the Washington decree did not affect any rights of said Ella May Larrick as to her dower in lands acquired during coverture or held by said William H. Larrick at the time such decree was granted, and neither did it bar her from an allowance for alimony.

In another case in this court, brought by the guardian of said Ella May Larrick, alimony was awarded to her on the — day of May, 1930, in the sum of $1,000. It is now claimed that such allowance for alimony should be a bar to this action for necessaries, and that such allowance comprehended all claims for support and maintenance due or to become due by reason of such marriage relationship.

There is nothing in the record to indicate that the court in making the allowance for alimony intended it to cover the claim for necessaries involved in the instant case.

The action for alimony was brought and prosecuted to judgment by the guardian of Ella May Larrick.

The claim on which the instant case was brought originated and the action was commenced before any guardian was appointed.

It is said by our Supreme Court in the case of *Fickel* v. *Granger*, 101 Ohio St., 101, that

"Alimony cannot, either before or after payment thereof, be subjected to the payment of debts of the wife which existed prior to the allowance thereof."

It is true that some courts have questioned whether this rule should apply in a case where a divorce was granted to the husband on the wife's aggression and alimony was allowed to the wife as a share of his property.

But conceding such exception to be correct, we cannot apply it to the instant case, because, the Washington divorce was not granted on any ground provided for in the

General Code of Ohio and it was, therefore, not granted for any aggression on the part of the wife recognized by the laws of Ohio.

I, therefore, hold that the decree for alimony heretofore made is not a bar to the action in the instant case.

It is also argued that before the plaintiff in this case can recover for such necessaries so furnished, he must allege and prove a contract, either express or implied, between him and the defendant whereby the defendant became obligated to pay for such necessaries.

I cannot agree with this contention. This action is evidently brought under and by virtue of the provisions of Section 8003 of the General Code of Ohio, which provides:

"If the husband neglects to make adequate provision for the support of his wife, any other person, in good faith, may supply her with necessaries for her support, and recover the reasonable value thereof from the husband."

The obligation, if any, to pay for such necessaries in this case arises by force of legislation and is a debt by law made necessary by well recognized rules of necessity and public policy, and when the circumstances bring a case within the terms of the statute, it is not necessary to prove a contract in order to recover.

An outstanding fact in this case is, that the divorce was granted to Larrick on the ground that his wife was insane, a ground not recognized by the laws of Ohio. As I have said, it was not granted because of the wife's aggression, for her reason was dethroned and she was not accountable for such condition and her case is different from what it would have been had she been guilty of sinning or wrongful conduct toward her husband under normal conditions.

In Ohio, by statutory enactment,

"Husband and wife contract toward each other obligations of mutual respect, fidelity and support,"

and

"The husband must support his wife if he is able to do so."

Can the husband in the absence of wrongful conduct on the part of his wife, willfully abandon her, take up his residence in another state, get a divorce there on a ground which the law of Ohio does not recognize as a valid ground and thus side-step and avoid the obligations of his marriage contract? Is the law so charitable on the one hand as to throw the mantle of security in such case around the husband who thus undertakes to avoid a sacred obligation under our laws, and on the other hand, so destitute of charity toward the wife as to deprive her of the common necessities which the law guarantees to her under the marriage contract?

By no stretch of the imagination can I visualize a principle of equity in such application of the law.

Section 1, Article IV of the U. S. Constitution requires that full faith and credit shall be given in each state to the judicial proceedings of every other state, and I imagine that much of the difficulty which we experience under our so-called "foreign divorce" laws, arises from a misinterpretation of this constitutional provision.

That constitutional enactment neither sanctions nor permits the courts of one state to exercise their power by constructive service in favor of its own citizens to the detriment of the property rights of citizens of another state.

On the grounds of public policy, Ohio courts do recognize divorces like the one in the instant case, as dissolving the marital relations.

Because of the lack of uniformity in our divorce laws among the several states, if the respective state laws were not so recognized, a man might be a bigamist in one state and a law-abiding citizen in another and his children might be legitimate in one state and illegitimate in another.

But while our courts recognize the power of other state courts to dissolve the marriage, they do not allow such other courts to disturb the property rights of residents of this state, existing at the time the marriage is dissolved, and such foreign courts are not permitted to extend their jurisdiction by constructive service into this state to the

prejudice of existing property rights under the laws of Ohio.

So, it follows, that the dower rights of a wife, under such divorce, in lands owned by the husband during coverture or at the time such divorce is decreed, are protected. She may also in such case, be awarded alimony in such amount as the Ohio court deems reasonable.

But it is claimed that our courts can go no further, and that such dower rights and the allowance of reasonable alimony comprehend all the relief to which a wife is entitled in such case, and I am free to admit that I have been unable to find any reported case in Ohio where the court has gone beyond the limits of dower and alimony.

But if, as a general principle, a wife under such "foreign divorce," may be awarded alimony, why can she not be protected in other personal rights which the law vouchsafes to her as obligations from her husband, growing out of the marriage relation and existing at the time the divorce was granted?

In the case of *Fickel* v. *Granger*, 83 Ohio St., 106, the distinguished judge who announced the opinion, says:

"Alimony is an allowance for support, which is made upon considerations of equity and public policy. It is not property of the wife recoverable as debt, damages or penalty. It is based upon the obligation growing out of the marriage relation, that the husband must support his wife, an obligation which continues even after a legal separation without her fault."

If a court after such "foreign divorce" decree can make an allowance to the wife for her support, based upon the husband's obligation to support her, why cannot one who has furnished her necessaries, as in the instant case, prior to the rendition of such decree for alimony, successfully prosecute an action against the husband to recover for necessaries so furnished?

In the latter case, the action is also based upon an obligation growing out of the marriage relation, made so by legislative enactment and enforceable as a debt by law. The principles of law upon which a court awards such

alimony are the same and identical with the principles which prompted the legislature to enact Section 8003 of the General Code.

Under the law and the evidence in this case, the obligation for necessaries furnished by plaintiff, is not a debt of the wife but a debt of the husband, made so by law.

The undisputed evidence shows that at the time the necessaries were furnished, Ella May Larrick was neither by reason of property nor her own exertions, able to support herself. The husband, defendant here, failed and neglected to make adequate or any provision for her support. Ella May Larrick was a half-sister to plaintiff's wife, and at her mother's death she was out of house and home and because of her dethroned reason, she was unable to care for herself. Plaintiff then took her to his own home and provided for and supported her during the time alleged. There is no ear-mark of bad faith on his part in so doing, but on the contrary, it was an humanitarian act and to my mind a service for which he may clearly be compensated under the law.

Judgment in this case is, therefore, rendered in favor of plaintiff against the defendant in the sum of $1,734, and costs.